Russell HENNINGS, Respondent,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellant.

No. C6–88–2109.

Court of Appeals of Minnesota.

April 25, 1989.

Review Denied June 9, 1989.

Edward F. Rooney, Rooney & Frishberg, Minneapolis, for respondent.

Kay Nord Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

State Farm Fire and Casualty Company appeals a trial court's decision finding that coverage existed under a State Farm homeowner's policy for a boating accident, the decision requiring State Farm to pay a portion of a stipulated settlement found by a jury to be unreasonable, and certain evidentiary rulings. Respondent Russell Hennings seeks review of the denial of his motion for judgment notwithstanding the verdict and the decision denying his claim for prejudgment interest from filing of the complaint.

## FACTS

Leonard White purchased the Port Prior Marina on June 6, 1983. Four days later, he was operating a Viking deck boat on Prior Lake. The boat was part of the marina's inventory. On the boat with White were his niece and nephew, Thomas and Ann Marie Marchione, both of whom were to be employed at the marina that summer. The parties dispute whether the boat ride was for business or pleasure purposes. The trial court found that at least part of the purpose was to orient White's future employees to the nature of the lake and to explain certain boat safety features related to their upcoming work at the marina.

Russell Hennings suffered injuries when the motorboat he was operating on Prior Lake that day was struck by the boat driven by Leonard White. Hennings was knocked unconscious and thrown from the boat. He claims that as a result, he suffered from headaches, loss of memory, double vision, dizziness, difficulty with his gait and balance, and a shoulder disfigurement.

After the accident, Hennings commenced a personal injury suit against White. At the time of the accident, Home Insurance Company (Home) insured Port Prior with a general business liability policy. Appellant State Farm provided White with a standard homeowner's policy. While Home agreed to defend and indemnify White, State Farm denied coverage and claimed the accident was specifically excluded from coverage under the business pursuits and watercraft exclusions of the homeowner's policy.

On March 19, 1985, Hennings and White entered into a *Miller v. Shugart* settlement. Under its terms, Port Prior Enterprises and White confessed judgment in favor of Hennings in the amount of $180,-

000 and Hennings agreed to collect the judgment solely from any available insurance coverage. White's policy with Home had a $100,000 policy limit; Home offered to pay $90,000, which Hennings accepted. Hennings subsequently commenced an action against State Farm to recover the remaining $90,000 of the settlement amount.

The parties submitted cross-motions for partial summary judgment on the issue of insurance coverage. The two issues raised were whether the State Farm homeowner's policy provided coverage for the boating accident and whether the *Miller v. Shugart* settlement was reasonable and binding on State Farm. The trial court entered partial summary judgment in favor of Hennings on the coverage issue and found that the watercraft exclusion did not relieve State Farm from liability. As to the business pursuits exclusion, the trial court found there was a dual business/pleasure purpose to the boating excursion and that the business exclusion thus did not apply.

The reasonableness of the *Miller v. Shugart* settlement was not resolved by the partial summary judgment order. Rather, the parties agreed that this issue would be tried before a jury. The jury found that $180,000 was not a reasonable amount and that a reasonable amount would have been $135,000. State Farm argued that the finding of unreasonableness should have rendered the settlement unenforceable, and Hennings moved for judgment notwithstanding the verdict (JNOV). The trial court adopted the jury verdict, denied Hennings' motion for JNOV, and entered judgment against State Farm in the amount of $35,000 (the difference between the jury's finding of a "reasonable" settlement amount and the primary policy's $100,000 limit of coverage), plus prejudgment interest, post-judgment interest, costs and disbursements.

## ISSUES

1. Did the trial court err when it found that the State Farm homeowner's policy provided coverage for the boating accident?

2. Did the trial court err in submitting the question of the reasonableness of a *Miller v. Shugart* agreement to a jury?

3. Did the trial court err in permitting Hennings to collect $35,000 from State Farm after the jury found that the agreement amount was unreasonable?

4. Did the trial court err in its award of prejudgment interest?

## DISCUSSION

### I

■■■ State Farm contends that coverage of the boating accident should have been precluded based on the watercraft and business pursuits exclusions contained in White's homeowner's policy with State Farm. We disagree. The interpretation and construction of an insurance policy is a matter of law, and this court may determine whether the trial court properly interpreted and applied the law to the facts presented. *State Farm Mutual Automobile Insurance Co. v. Budget Rent–A–Car Systems, Inc.*, 359 N.W.2d 673, 675–76 (Minn.Ct.App.1984). In evaluating insurance coverage and exclusions within a policy, an insurer denying coverage because of a policy exclusion bears the burden of proof and insurance exclusion clauses are to be strictly interpreted against the insurer. *Reinsurance Association of Minnesota v. Patch*, 383 N.W.2d 708, 711 (Minn.Ct. App.1986).

■■■ Section II of the State Farm policy provided that coverage does not apply "to bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of: * * * a watercraft: (a) owned or rented to any insured." Facts in the record indicate that Port Prior Enterprises, Inc. owned this boat. White owned 50 percent of the Port Prior stock at the time of the accident. While White was the sole financial investor at the time of the accident, stock had been issued to White's brother-in-law even though he had not yet paid for it. We hold that issuance of the stock, rather than payment for it, was determinative. Therefore, the corporation was in existence at the time of the accident,

the corporation owned the boat, and the trial court correctly found that the watercraft exclusion in White's homeowner's policy was inapplicable. The trial court did not abuse its discretion when it refused to invoke a reverse piercing of the corporate veil theory under *Roepke v. Western National Mutual Insurance Co.*, 302 N.W.2d 350, 352 (Minn.1981), because the corporation, in view of the stock ownership, could not be considered White's "alter ego."

■ Section II of the policy also provided that coverage does not apply to "bodily injury or property damage arising out of business pursuits * * *. This exclusion does not apply: (1) to activities which are ordinarily incident to non-business pursuits." In order for an act to be considered part of a business pursuit, it must be one that the insured would not normally perform but for the business, and must be *solely* referable to the conduct of the business. *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373, 375 (Minn.1977). The trial court found there was a dual business/pleasure purpose to White's outing on the day of the accident, rendering the exclusion inapplicable. The record amply supports the finding of a dual purpose, and the trial court did not err in finding the business pursuits exclusion inapplicable.

## II

■ State Farm argues that the settlement between Hennings and White was not reasonable and prudent and that it should not be enforced against State Farm. The Minnesota Supreme Court in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), stated:

Although having found that the stipulated judgment is untainted by fraud or collusion, our inquiry is not at an end. It seems to us there must also be a showing that the settlement on which the stipulated judgment is based was reasonable and prudent.

\* \* \* \* \* \*

The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.

*Id.* at 734–35.

The trial court submitted this matter to a jury through a special verdict form containing the following two questions, and the jury answered as follows:

Question 1:

Was $180,000 a reasonable amount for the settlement on March 19, 1985 of Russell Hennings' personal injury case against Port Prior Enterprises and Leonard E. White, Jr.?

No
(Yes or No)

Question 2:

(To be answered only if your answer to Question 1 is "No.")

What was a reasonable amount for the settlement on March 19, 1985 of Russell Hennings' personal injury case against Port Prior Enterprises and Leonard E. White, Jr.?

$135,000.00

The trial court adopted the jury verdict on both questions. Both parties challenge the trial court's actions. Hennings argues that the trial court should have decided as a matter of law whether the settlement was reasonable, even though the parties consented to submitting the question to a jury. State Farm contends that when the jury found the award unreasonable, the settlement should not have been enforced against them at all. State Farm further argues that the trial court erred by refusing to admit testimony and other evidence of Hennings' physical and psychological status prior to the settlement.

We note that both Hennings and State Farm agreed through stipulation that the question of reasonableness would be decided by the jury. While this court has on at least two occasions declared that the determination of reasonableness is a question of law for the court, the question is currently before the Minnesota Supreme Court. *Hartfiel v. McLennan*, 430 N.W.2d 215, 220 (Minn.Ct.App.1988); *Osgood v. Medi-*

*cal, Inc.,* 415 N.W.2d 896 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Feb. 12, 1988); *Buysse v. Baumann–Furrie & Co.,* 428 N.W.2d 419, 427 (Minn.Ct.App.1988), *pet. for rev. granted* (Minn. Oct. 19, 1988). In view of both the stipulation and the uncertainty surrounding the factfinder issue, the trial court wisely submitted this question to the jury and then adopted the finding as its own. The trial judge explained that he did so to avoid the need for another trial in the event it was later determined that a jury trial was required. There was no error in such procedure.

## III

■ While the trial court did not err in submitting Question 1 to the jury, we do hold it error for the court to have submitted Question 2 to the jury. While not directly on point, two Minnesota Supreme Court decisions provide guidance. *Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166 (Minn.1979), involved a contribution dispute between a defendant pilot and defendant manufacturer arising out of an airplane crash. The plaintiff widow of the decedent first sued the pilot alone. The jury found him not negligent and determined plaintiff's damages. In a subsequent action, plaintiff sued the manufacturer. The supreme court held that the manufacturer had a right to all of the defenses it could have offered had it been made a defendant in the first action. *Id.* at 169. While the issue of damages was litigated in the first suit against the pilot, the manufacturer had the right to relitigate the damages issue in the suit against it. *Id.* at 170.

In *Runia v. Marguth Agency, Inc.,* 437 N.W.2d 45 (Minn.1989), the supreme court dealt with a personal injury case where the passenger-victim sued the driver and the insurer of a snowmobile. The driver was found 100 percent at fault; the jury determined damages and the trial court granted an unconditional additur. The owner of the snowmobile subsequently sued the insurer, alleging that the insurer failed to provide adequate coverage to fulfill the owner's request and misrepresented the amount of insurance coverage actually provided. The supreme court held that the insurer was not bound by the judgment in the first lawsuit to which it was neither party nor privy. The court also held that the insurer was entitled to a new trial on damages. *Id.* at 51.

Both *Hart* and *Runia* are distinguishable from the case at hand. This case was not tried in a piecemeal fashion, there was an insurance contract whereby the insurer was bound by its contract to indemnify its insured if the insured had not breached the contract or obtained judgment by fraud or collusion, and this case does not involve additur or contribution. Nevertheless, we find implicit support in these cases for our view that State Farm should have the option of relitigating the damages issue. The jury has determined that the settlement was unreasonable. Following that decision, the settlement was irrelevant and the question then became the extent of plaintiff's *damages.* State Farm has presented evidence demonstrating a good-faith controversy as to both coverage issues and the extent of plaintiff's damages referrable to the accident. We view these as questions upon which reasonable persons could differ. It would therefore be inequitable to penalize State Farm for not having participated in the settlement of this case by disallowing them from litigating the damages question fully.

In its memorandum attached to the order dated June 17, 1988, the trial court notes that "the Defendant insurer has requested the jury to determine the reasonable amount of settlement." While the record supports the insurer's agreement to submit the question of reasonableness to the jury and further indicates that the trial court informed the insurer of Question 2, there is no agreement of record that State Farm waived the right to challenge the trial court's submission to the jury of the question of an actual *amount* "for the settlement." In fact, State Farm made a series of evidentiary challenges in which it argued that it should be allowed to look beyond the settlement and produce all relevant evidence regarding Hennings' physical and psychological status prior to the acci-

dent as bearing on the question of his *damages.*

 State Farm urges that there should be no further determination of damages after the jury found the settlement unreasonable. *Miller v. Shugart* and its progeny do not provide any guidance here. We do not agree that State Farm is no longer liable once the settlement is found unreasonable.

First, it is axiomatic that forfeitures are not favored in the law. *See, e.g., Warren v. Driscoll,* 186 Minn. 1, 5, 242 N.W. 346, 347 (1932). Second, the trial court found, and we have affirmed, that State Farm's policy afforded coverage to White and that State Farm has a contract obligation to pay damages suffered by Hennings at the hands of State Farm's insured. Third, and most important, we believe that to foreclose *any* recovery from an insurer under a *Miller v. Shugart* agreement subsequently found to be unreasonable would greatly discourage such settlements. A claimant's attorney would be foolhardy to advise a client to enter into a settlement a jury might find unreasonable, resulting in complete forfeiture. We also note that in this particular case the jury found that $180,000 was unreasonable, while $135,000, or 75 percent of the stipulated amount, was reasonable. It is conceivable that even experienced attorneys involved in settlement negotiations could "misjudge" a reasonable settlement amount by one-third or even more.

 We also note that we agree with the trial court's conclusion that once an amount of damages has been determined, State Farm is liable only for the difference between the damages determined and the Home policy's limit of coverage.

### IV

 Because we are remanding for a determination of damages, the trial court's prior decision on prejudgment interest is moot at this point. Nevertheless, in the interest of judicial economy, we address the issue. The trial court first awarded Hennings prejudgment interest from the commencement of the suit against State Farm, then vacated that order and made an award of prejudgment interest from the date of the jury verdict. Hennings argues that he is entitled to prejudgment interest on the settlement from the date of commencement of the suit against State Farm. We believe the trial court's second order was correct.

Subdivision 1(a) of Minn.Stat. § 549.09 (1988) was in effect at the time the jury made its findings on reasonableness of the settlement. Under this provision, Hennings was entitled as a statutory matter to prejudgment interest from the return of the verdict to the entry of the judgment. Subdivision 1(b) of § 549.09 deals with preverdict interest and provides that such interest can be limited by the terms of an insurance contract. While State Farm cannot limit prejudgment interest *after* the verdict, it can and did preclude such interest from the commencement of the suit *to* the verdict. We believe the trial court's award of prejudgment interest from the time of the jury verdict to the entry of the judgment was correct and would affirm but for the necessity of vacating the judgment.

### DECISION

We affirm the trial court's finding of insurance coverage and the decision to submit the question of reasonableness of the settlement to the jury and to adopt the verdict as its own. We reverse the decision to submit to the jury the determination of a reasonable settlement amount and order the judgment vacated. We remand for a jury trial on the question of damages without further reference to reasonableness and prudence of the settlement. State Farm is liable for plaintiff's damages to the extent they are found to be in excess of the primary insurer's policy limits. Finally, we agree with the trial court's order granting prejudgment interest from the date of the verdict only.

Affirmed in part, reversed in part and remanded.